UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS R. OLRICH,

    Plaintiff,

v.                                           Case No. 2:19-cv-793-JLB-NPM

CARLOS VELLARDE, DOTTY RIDDLE,
WELLPATH RECOVERY SOLUTIONS, and
FLORIDA CIVIL COMMITMENT CENTER,

    Defendants.
_____/

## ORDER

Plaintiff Thomas R. Olrich is a pro se civil detainee at the Florida Civil Commitment Center ("FCCC") who is awaiting trial under Florida's Jimmy Ryce Act. Fla. Stat. §§ 394.910–.932. He filed suit against the contractor that operates the FCCC (Wellpath Recovery Solutions, or "Wellpath") and two of its employees (Carlos Vellarde and Dotty Riddle) for ostensibly denying him a job as an infirmary orderly, among other related affronts.[1] (Doc. 1.) Defendants move to dismiss Mr. Olrich's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 17.) Mr. Olrich has not filed a response to Defendants' motion.[2]

---

[1] As Defendants observe in their motion to dismiss, Mr. Olrich has named the FCCC itself as a Defendant in this case. (Doc. 17 at 8–9.) The FCCC is simply the name of a facility—it does not represent a natural or juridical person. Going forward, the Court will assume that Mr. Olrich meant only to sue Wellpath, the contractor that operates the facility.

[2] Mr. Olrich previously filed a motion for miscellaneous relief, which the Magistrate Judge granted after liberally construing it as a motion for extension of

After carefully reviewing Mr. Olrich's pro se complaint, the Court agrees with Defendants that Mr. Olrich fails to state a claim under any of the numerous theories he cites. Accordingly, Defendants' motion to dismiss is **GRANTED**, and Mr. Olrich's pro se complaint is **DISMISSED WITHOUT PREJUDICE**.

## BACKGROUND[3]

Mr. Olrich alleges that, on May 30, 2019, Mr. Vellarde—who Mr. Olrich describes as a "job coordinator/director" at the FCCC— "deprived [him] of the right to work in the Infirmary Orderly position." (Doc. 1 at 4–5.) The reason Mr. Vellarde supposedly gave Mr. Olrich for this decision was that Mr. Olrich committed a "rule infraction" on December 21, 2018. (Id. at 5.) According to Mr. Olrich, he was found "not guilty" of Mr. Vellarde's cited violation by the "behavior management committee." (Id. at 6.)

Mr. Olrich further claims that Mr. Vellarde "den[ied him the] equal opportunity of applying for any job opening, which [he was] qualified to fill." (Id.) Mr. Vellare purportedly justified this denial by telling Mr. Olrich "that a prisoner accused of any sex offense [is] banned from working around women." (Id.) Such a

---

time to respond to Defendants' motion to dismiss. (Docs. 18–19). Mr. Olrich then filed a motion to appoint counsel, which was denied. (Docs. 20, 22.)

[3] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir.1998)). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

response is, according to Mr. Olrich, completely nonsensical because the FCCC's purpose is to house sex offenders. (Id. at 6.)

Mr. Olrich's responded to these affronts by filing a resident grievance form documenting his experience with Mr. Vellarde. (Doc. 1-1.) In addition to the space on the grievance form reserved for a "brief" summary of the grievance, Mr. Olrich appended five additional handwritten pages. (Id.) Ms. Riddle, who served as the "grievance examiner," returned Ms. Olrich's grievance form without addressing its substance "due to [its] excessive length." (Id.)

Finally, Mr. Olrich alleges that FCCC acted with "deliberate indifference" by rescinding its former policy of posting a public notice "of all Job Openings in every housing unit, thereby giving equal opportunity to apply for a job." (Doc. 1 at 6.) This previous policy has apparently been replaced by a "tap-on-shoulder" system, which Mr. Olrich believes "is not a civilized process." (Id.; Doc. 1-1 at 3.)

## DISCUSSION

Mr. Olrich lists five claims in his pro se complaint:

1. Circumventing the Right to Work—Article I, Section 6 of the Florida Constitution.

2. Job Discrimination—Fourteenth Amendment—Due Process of Law

3. Deliberate Indifference—Eighth Amendment—Cruel and Unusual Punishment.

4. Circumventing PRG-24—Resident Worker Program—Eighth and Fourteenth Amendment.

5. Conspiracy Against Rights—18 U.S.C. § 241.

(Doc. 1 at 4.)

The Court can easily dispose of Mr. Olrich's first claim because Article I, Section 6 of the Florida Constitution has nothing to do with the allegations in his pro se complaint. The threefold purpose of this provision is to: (1) prohibit denial or abridgment of a person's right to work based on membership or non-membership in a labor union or labor organization, (2) constitutionally enshrine the right to collective bargaining, and (3) limit the right of public employees to strike. Mr. Olrich's complaint has nothing to do with union membership, collective bargaining, or the right to strike. Thus, even if Article I, Section 6 were self-executing (which appears doubtful),[4] it would not further Mr. Olrich's cause.

Claims 2, 3, and 4 seem to contemplate violations of federal constitutional rights, so the Court will assume that Mr. Olrich intended to bring these claims under 42 U.S.C. § 1983. Cf. Houtsma v. Unknown Defendant, No. 2:18-cv-598-FtM-38CM, 2018 WL 4354830, at *1 (M.D. Fla. Sept. 12, 2018) ("Plaintiff appears to be filing a § 1983 claim alleging that he is not safe in the FCCC . . . .").

Section 1983 creates a cause of action for a person who, under color of state law, was deprived of "any rights, privileges, or immunities" secured by the federal

---

[4] Florida Statutes, Chapter 447, implements the protections of Article I, Section 6. See Int'l Ass'n of Firefighters Loc. S-20 v. State, 221 So. 3d 736, 737 (Fla. 1st DCA 2017) (citing State v. Fla. Police Benevolent Ass'n, 613 So.2d 415, 418 (Fla. 1992)). The Florida Supreme Court has held that the Florida legislature had a duty to provide a means of enforcing organic law concerning basic rights. Dade Cnty. Classroom Tchrs. Ass'n v. Legislature, 269 So. 2d 684, 688 (Fla. 1972) (declining to judicially implement rules regarding collective bargaining by public employees because it was confident that the Florida legislature would fulfill its duty to create legislative standards on the right of collective bargaining by public employees, as guaranteed by Article I, Section 6). Mr. Olrich has not pleaded a claim under Chapter 447, nor should he; it is irrelevant to his alleged problems.

Constitution or federal law.  Thus, "[t]o prevail on a claim under § 1983, a plaintiff must demonstrate both (1) that the defendant deprived her of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law."  Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998).

The Fourteenth Amendment's Due Process Clause provides that a state shall not "deprive any person of life, liberty, or property, without due process of law."  To state a claim under section 1983 for violation of the Fourteenth Amendment's Due Process Clause, a plaintiff must show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir.1994)).

The Eleventh Circuit has held that a prison inmate generally does not have a constitutionally protected interest in a particular prison job.  Adams v. James, 784 F.2d 1077, 1079–80 (11th Cir. 1986) (noting, however, that "lack of entitlement to a particular privilege does not free prison administrators to grant or withhold the privilege for impermissible reasons"); see also Searcy v. Prison Rehab Indus. & ENT, Inc., 746 F. App'x 790, 795 (11th Cir. 2018) (same).

Mr. Olrich is not a prisoner, and FCCC is not a prison.  Regardless, the Court has found no case holding that a person being housed in a civil commitment facility has a constitutionally protected interest in being employed.  The few courts to have addressed this issue have decided precisely to the contrary.  See, e.g., Freeze v. Velarde, No. 2:18-cv-114-FtM-29NPM, 2020 WL 886485, at *2 (M.D. Fla. Feb. 24,

5

2020) ("Since Plaintiff does not have a constitutionally protected property interest in the FCCC computer lab job, his claim fails."); Perseke v. Moser, No. 16-cv-557 (PJS/LIB), 2016 WL 6275191, at *4 (D. Minn. Sept. 26, 2016) ("MSOP patients have no protected interest in employment while in the MSOP."), report and recommendation adopted, 2016 WL 6246761 (D. Minn. Oct. 25, 2016); Young v. Emmanuel, No. CV 15-4253(SRC), 2016 WL 3408853, at *5 (D.N.J. June 15, 2016) ("There is no independent right of a civilly committed sex offender to maintain institutional employment."); Robinson v. Virginia, No. 1:12CV112 TSE/TCB, 2012 WL 681635, at *4 (E.D. Va. Feb. 29, 2012) (holding that civilly committed plaintiff failed to state a claim under section 1983 for termination of Community Living Incentive Program, or "CLIP," because he had "no constitutional right to job opportunities"); Strutton v. Blake, No. 4:04CV616-DJS, 2006 WL 335715, at *8 (E.D. Mo. Feb. 14, 2006) ("[C]ivilly committed persons, such as plaintiffs, do not have this alleged right to work."). Because Mr. Olrich's desired job as an infirmary orderly does not represent a constitutionally protected interest, his Fourteenth Amendment claims must be dismissed. [5]

---

[5] Cases like Adams imply that there may be "impermissible reasons" for denying employment benefits to people in Mr. Olrich's situation. 784 F.2d at 1080 ("The doctrine of unconstitutional conditions prohibits terminating benefits, though not classified as entitlements, if the termination is based on motivations that other constitutional provisions proscribe"). An example would be depriving someone of employment benefits as a means of racial discrimination. See Searcy, 746 F. App'x at 794. But the Court has no reason to believe this is such a case. Though Mr. Olrich uses the word "discrimination" in his complaint several times, the only "discrimination" he cites is a prison-like employment policy that he believes "should not exist in a treatment facility," and a tap-on-shoulder hiring process that he believes is "not a civilized process." (Doc. 1 at 5–6.) The Court fails to see how Mr.

Similarly, the Eighth Amendment's protection against "cruel and unusual punishments" does not help Mr. Olrich.  "A work assignment does not constitute a basic human need . . . and being deprived from working does not constitute an Eighth Amendment violation." Millare v. Stratton, No. 16-cv-1633-BAS-MDD, 2017 WL 9604609, at *8 (S.D. Cal. Feb. 28, 2017), report and recommendation adopted, 2017 WL 1277798 (S.D. Cal. Apr. 6, 2017); see also Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (holding that the practice of housing two prisoners in one cell did not violate the Eighth Amendment by virtue of, among other things, limited work hours because "deprivations of this kind are simply not punishments").

To the extent Mr. Olrich may be upset that Ms. Riddle rejected his written grievance because it was too long, the Court likewise does not believe any constitutional issue is implicated.  See Freeze, 2020 WL 886485, at *2 ("Plaintiff has no constitutionally protected liberty interest in the FCCC's grievance procedures."); see also Bramlett v. Masters, No. 2:19-cv-712-FtM-38NPM, 2019 WL 4888832, at *2 (M.D. Fla. Oct. 3, 2019) ("An alleged due process violation of the Fourteenth Amendment regarding grievance procedures does not give rise to a stand-alone claim under § 1983." (citation omitted)).

Finally, the Court rejects Mr. Olrich's conspiracy claim.  Putting aside the fact that Mr. Olrich cites a criminal conspiracy statute in his complaint, there can

---

Olrich's disagreement with FCCC's disciplinary and hiring processes could rise to the level of a constitutional violation.  Though Mr. Olrich resents FCCC's apparent practice of restricting sex offenders from certain jobs, the Court likewise fails to see how this policy invidiously "discriminates" against anyone if the discrimination is not based on constitutionally problematic criteria.

be no <u>civil</u> conspiracy without an underlying claim.  See <u>Scolieri v. John Hancock Life Ins. Co. (U.S.A.)</u>, No. 2:16-cv-690-FTM-38CM, 2017 WL 700215, at *6 (M.D. Fla. Feb. 22, 2017).  Because the Court has dismissed all of Mr. Olrich's underlying claims, it must necessarily dismiss his conspiracy claim as well.  <u>Id.</u>

### CONCLUSION

For the reasons above, Defendants' motion to dismiss (Doc. 17) is **GRANTED**, and Mr. Olrich's pro se complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.  The Clerk is **DIRECTED** to terminate any pending deadlines and close the file.[6]

**ORDERED** in Fort Myers, Florida, on March 26, 2021.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

[6] To the extent Mr. Olrich's supplemental filing in support of his motion to appoint counsel (Doc. 20) raises unpleaded access-to-court issues, the Court need not address them.